IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARCUS JONES,

               Petitioner,

   v.

UNITED STATES OF AMERICA,

               Respondent.

CRIMINAL ACTION
NO. 12-314-1

CIVIL ACTION
NO. 19-1891

## OPINION

**Slomsky, J.**                                                                    **July 6, 2021**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

   A.   Evidence Presented at Trial.......................................................................... 5

   B.   Guilty Plea Colloquy.................................................................................... 9

   C.   Post-Trial Motions and Appointment of New Counsel................................ 10

   D.   Sentence and Appeal ................................................................................... 14

   E.   The Instant 2255 Motion and the Government's Response ............................ 16

III.  STANDARD OF REVIEW ................................................................................ 17

IV.  ANALYSIS ........................................................................................................ 18

   A.   Ground 1: Petitioner's Prosecutorial Misconduct Claims Will Be Denied...................... 18

      1.   Prosecutorial Misconduct Claim Based on Witness Vouching Has Been
          Procedurally Defaulted ................................................................................ 18

2.    Prosecutorial Misconduct Claim Based on Introduction of Prior Bad Act Evidence Fails Because the Prior Acts Were Admissible ............................................................ 21

3.    Prosecutorial Misconduct Claim Based on Leading and Coaching Government Witnesses Belies the Record ...................................................................... 22

4.    Four Remaining Prosecutorial Misconduct Claims are Vague and Conclusory or Otherwise Belie the Record ...................................................................... 24

B.    Ground 2: Petitioner's Claims for Alleged Violations of Federal Rules of Evidence 404(b), 403, and 701 Will Be Denied ............................................................... 26

C.    Ground 3: Petitioner's Ineffective Assistance of Counsel Claims Will Be Denied ......... 28

1.    Trial Counsel .................................................................................................... 29

a.    Trial Counsel's Alleged Failure to Investigate the Facts of the Government's Case and Failure to Subpoena Alibi Witness ...................................................... 29

b.    Trial Counsel's Alleged Failure to Move for Mistrial Due to Witness Perjury ........ 31

c.    Trial Counsel's Alleged Failure to Object to Prosecutor's Vouching for Government Witness ................................................................................ 33

d.    Trial Counsel Did Not Admit on the Record He Was Ineffective ............................ 33

2.    Post-Trial Counsel's Alleged Failure to Raise Claims On Direct Appeal .................... 36

D.    Ground 4: Inadmissible Testimony from Government Witnesses ................................... 38

V.    CONCLUSION .................................................................................................... 43

# I.    INTRODUCTION

Before the Court is Petitioner Marcus Jones' <u>pro se</u> Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 ("2255 Motion").  (Doc. No. 224.)  On February 25, 2014, Petitioner pled guilty to Counts IV and V of a Superseding Indictment charging him with the robbery of Aya's Pizza ("the Aya's Pizza robbery").  (<u>See</u> Doc. Nos. 127; 152 at 23:21-28:8.)  Count IV charged him with a violation of 18 U.S.C. § 1951(a) (interference with commerce by threats or violence), and Count V charged him with a violation of 18 U.S.C. § 924(c)(1) (using a firearm in furtherance of a crime of violence).  (<u>See</u> Doc. No. 28 at 7-8.)  He went to trial on the five remaining Counts of the Superseding Indictment, in which he was charged with offenses relating to his participation in two other robberies.  They were the robbery of Peralta Grocery Store ("the Peralta robbery") and the robbery of Golden Kingdom II Restaurant ("the Golden Kingdom robbery").  (<u>See</u> <u>id.</u> at 1-6, 9-10.)

Ultimately, a jury found Petitioner guilty of Counts I, II, and III of the Superseding Indictment charging him with offenses relating to the Peralta robbery.  (<u>See</u> Doc. Nos. 138; 217 at 1.)  Count I charged him with a violation of 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3) (conspiracy to interfere with commerce by threats or violence), Count II charged him with a violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2 (interference with commerce by threats or violence and aiding and abetting), and Count III charged him with a violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (using a firearm in furtherance of a crime of violence and aiding and abetting).  (<u>See</u> Doc. No. 28 at 1-6.)  The jury found him not guilty on Counts VI and VII, which charged him with offenses relating to the Golden Kingdom robbery.  (<u>See</u> <u>id.</u> at 9-10.)

On May 1, 2019, Petitioner filed his 2255 Motion, claiming that his sentence should be vacated, set aside, or corrected on four grounds: (1) prosecutorial misconduct ("Ground 1"); (2) violation of Federal Rules of Evidence 403, 404(b), and 701 ("Ground 2"); (3) ineffective

assistance of counsel ("Ground 3"); and (4) inadmissible testimony from government witnesses Jonte King and Maleek Brown ("Ground 4"). (Doc. No. 224 at 5-10.) On June 17, 2019, the Government filed a Response to the Motion. (Doc. No. 228.)

For reasons that follow, the Court will deny Petitioner's 2255 Motion without holding an evidentiary hearing.[1] A certificate of appealability will not be issued.

## II.     BACKGROUND

On March 28, 2013, the Government filed a Superseding Indictment against Petitioner Marcus Jones and two co-conspirators, Jonte King and Maleek Brown, charging them with the robberies of three retail stores located in Philadelphia, Pennsylvania. (Doc. No. 28.) Specifically, Petitioner was charged with the Aya's Pizza robbery.[2] (See id. at 7-8.) Petitioner and King were charged with the Golden Kingdom robbery. (See id. at 9-10.) And Petitioner, King, and Brown were charged with the Peralta robbery. (See id. at 5-6.)

---

[1] A district court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The court is given discretion in deciding whether to hold a hearing on a § 2255 motion. See United States v. Vaughn, 704 F. App'x 207, 211 (3d Cir. 2017); Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). When exercising this discretion, the court must decide whether the claims, if proven, would entitle the movant to relief, and then consider whether an evidentiary hearing is necessary to determine the truth of the allegations. See Gov't of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d Cir. 1994). A hearing is required "if the habeas petition 'allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record.'" Vaughn, 704 F. App'x at 212 (quoting United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015)). "In assessing whether a hearing is necessary, the court 'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" Id. (quoting Tolliver, 800 F.3d at 141); see also Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991) ("[B]ald assertions and conclusory allegations do not provide sufficient ground . . . to require an evidentiary hearing."). Here, an evidentiary hearing is not warranted because "the [M]otion[, . . .] files[,] and records of the case conclusively show that [Petitioner] is entitled to no relief," § 2255(b), and the Motion is filled with bald assertions and conclusory allegations.

[2] During the Aya's Pizza robbery, Petitioner brandished a semiautomatic firearm and took $500. (See Doc. No. 152 at 45:1-17, 48:14-19.)

In total, Petitioner was charged with seven offenses for the three robberies, including one count of conspiracy to rob Peralta and Golden Kingdom, in violation of 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3)[3] (Count I); three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts II, IV, and VI); and three counts of using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)[4] (Counts III, V, and VII). (Doc. No. 28.) Counts

---

[3]     18 U.S.C. § 1951 makes it a crime for any person to:

> [I]n any way obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce, . . . or attempt[] or conspire[] so to do, [by unlawfully] taking or obtaining . . . personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession . . . .

18 U.S.C. §§ 1951(a), (b)(1).

[4]     At all times relevant to this case, 18 U.S.C. § 924(c) provided, in pertinent part:

> (c)(1)(A)   Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

> > (i)  be sentenced to a term of imprisonment of not less than 5 years;

> > (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

> . . .

> (C)  [In the case of a second or subsequent conviction under this subsection,] the person shall--

> > (i)  be sentenced to a term of imprisonment of not less than 25 years; . . .

> . . .

(D) Notwithstanding any other provision of law--

. . .

  (ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

. . .

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and--

  (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, . . .

. . .

(4) For purposes of this subsection, the term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

18 U.S.C. § 924(c).

\* \* \*

As will be discussed in detail, Petitioner was convicted of, inter alia, two § 924(c) violations (Counts III and V). (See Doc. No. 217 at 1.) At the time his case was tried, a "defendant convicted of two § 924(c) violations in a single prosecution faced a 25-year minimum for the second violation." United States v. Davis, 139 S. Ct. 2319, 2324 n.1 (2019); see also United States v. Meehan, 798 F. App'x 739, 740 (3d Cir. 2020) (alterations in original) (quoting United States v. Walker, 473 F.3d 71, 75 n.1 (3d Cir. 2007)) ("Previously, § 924(c)(1)(C) 'applie[d] even if the second or subsequent conviction [was] for a count charged in the same indictment as the initial violation of Section 924(c).'").

In July 2017, Petitioner was sentenced in this case to 408 months' incarceration. (See Doc. No. 217); infra Section II.D. Thereafter, in December 2018, Congress, pursuant to § 403(a) of the First Step Act, "amended [18 U.S.C.] § 924(c)(1)(C) to apply only after a 'prior conviction under this subsection has become final.'" Meehan, 798 F. App'x at 740 (quoting Pub. L. No. 115-391, § 403(a)); see also Davis, 139 S. Ct. at 2324 n.1 (quoting Pub. L. 115-391, § 403(a), 132 Stat. 5221) ("In 2018, Congress changed the law so that, going forward, only a second §

II, III, VI, and VII regarding the Peralta and Golden Kingdom robberies also charged Petitioner with a violation of 18 U.S.C. § 2.  (See id. at 5-6, 9-10.)[5]

Before trial, King and Brown pled guilty to their involvement in the Peralta and Golden Kingdom robberies.  (See Doc. No. 160 at 2.)  Trial in this case was listed for February 25, 2014. (See Doc. No. 106.)  That morning, Petitioner pled guilty to Counts IV and V of the Superseding Indictment regarding the Aya's Pizza robbery.  (See Doc. Nos. 152 at 23:21-28:8; 217 at 1.)  A 4-day trial on the remaining Counts ensued.  (See Doc. Nos. 152-56.)

A.    Evidence Presented at Trial

The Government "called 10 witnesses during two days of testimony at trial."  (Doc. No. 228 at 7; see also Doc. Nos. 153-54.)  In order to establish Petitioner's involvement in the Peralta robbery, the Government presented evidence including, inter alia: (1) surveillance video of the Peralta robbery depicting the robbers stealing money from the cash register; (2) the testimony of Petitioner's co-conspirators, Brown and King; and (3) evidence that Petitioner owned distinctive blue jeans and sneakers, similar to the blue jeans and sneakers worn by one of the assailants in the Peralta robbery.  (See Doc. Nos. 160 at 3-4.)

---

924(c) violation committed 'after a prior [§ 924(c)] conviction . . . has become final' will trigger the 25-year minimum.").

The 2018 amendment to 18 U.S.C. § 924(c)(1)(C), however, has no effect on the instant case because "§ 403(a), by its plain terms, does not apply retroactively to [Petitioner], who had already been sentenced when the First Step Act was enacted."  Meehan, 798 F. App'x at 740-41; see also id. at 740 ("[Section] 403(a) . . . does not apply retroactively to finalized convictions . . . .").  Therefore, the former language of § 924(c)(1)(C), quoted above, still applies and Petitioner's second § 924(c) conviction in this case resulted in a 25-year consecutive mandatory minimum sentence.  (See Doc. No. 217 at 1-2.)

[5]    18 U.S.C. § 2 provides that "[w]hoever commits an offense against the United States[,] . . . aids, abets, counsels, commands, induces or procures its commission, . . . . [or] willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."  18 U.S.C. § 2.

To establish Petitioner's identity as the Peralta robber, the Government introduced evidence that he owned distinctive blue jeans and sneakers, similar to those worn by one of the Peralta robbers.  (See Doc. Nos. 160 at 3-4; 153 at 159:5-161:5; 154 at 97:12-21.)  This evidence consisted of photos of the clothes and shoes Petitioner was wearing at the time of his arrest and photos and surveillance video of the Aya's Pizza robbery, a crime to which Petitioner had admitted committing.

When arrested, Petitioner was "wearing [black] shoes with a neon yellow stripe and jeans with [white] markings that appeared to match those of the Aya's [Pizza] robber."  United States v. Jones, 737 F. App'x 68, 70 n.2 (3d Cir. 2018); (see also Doc. No. 154 at 106:3-107:10.)  Noticing this similarity, police "seized the shoes and jeans to compare them to those visible in the video of the Aya's [Pizza] robbery."  Id.; (see also Doc. No. 154 at 106:11-24.)  At trial, Detective Kert Wilson, who assisted in the investigation of the armed robberies, testified that he "took photos of the clothes [Petitioner] was wearing when he was arrested and juxtaposed them to images from the Peralta robbery, to show whether the seized items matched the Peralta robber's clothes."  Jones, 737 F. App'x at 70.  The photos of Petitioner's seized clothing and shoes were introduced at trial and compared to photos and surveillance video of the Peralta robbery "in which the perpetrator wore similar distinctive black shoes with a neon yellow stripe" and blue jeans with white patches. (Doc. No. 228 at 5.)

Detective Wilson also testified "that, in his experience, surveillance videos skew the colors they record, so to better determine whether [Petitioner's] shoes [seized by law enforcement] matched those in the Peralta [robbery surveillance] video, he walked through Peralta [while] wearing the shoes and compared that video with the robbery video to see if the shoes' coloring appeared the same through the medium of the recording."  Jones, 737 F. App'x at 70; (see also

Doc. No. 154 at 264:10-265:17.)  At trial, "the Government . . . played a video of the . . . walk-through on a split screen with the video of the actual robbery, highlighting the shoes' similarities." (Doc. No. 160 at 4; <u>see also</u> Doc. No. 154 at 273:1-275:3.)  During his testimony, Detective Wilson commented that the comparison between the shoes' coloring in his walk-through video and in the Peralta robbery surveillance video, "in [his] opinion, was just spot on."  (Doc. No. 154 at 265:15-18.)  Although Petitioner's counsel objected to this statement, no specific ruling was made on the objection.  (See <u>id.</u> at 265:14-266:8.)  The Court did rule though that the comparative evidence was admissible, despite an objection.  (See <u>id.</u> at 266:9-272:15.)  And the Court gave the following cautionary instruction to the jury:

> [T]he evidence you're now hearing is for comparison purposes only.  It's up to the jury as the fact finder to decide whether or not the shoes are one and the same -- one and the same that is in the video at the time of the robbery.
>
> This witness is just testifying based upon his creating the video.  But, ultimately, you're the . . . fact finder to make the judgment as to what weight you want to give to this testimony and whether the comparisons are sufficient in your mind.

(<u>Id.</u> at 279:3-15.)

In addition, through the testimony of Detective William Farrell, a detective involved in the investigation of the armed robberies, the Government introduced evidence of the Aya's Pizza robbery, a crime committed by Petitioner, under Federal Rule of Evidence 404(b).[6]  (See <u>id.</u> at 106-

---

[6]    Under Rule 404(b), "evidence of a crime" is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . ."  Fed. R. Evid. 404(b).  However, such evidence may be admitted "for another purpose, such as proving . . . identity . . . ."  <u>Id.</u>  "For evidence of past crimes to be admissible under Rule 404(b), it 'must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it.'"  <u>United States v. Jones</u>, 737 F. App'x 68, 71 (3d Cir. 2018) (quoting <u>United States v. Green</u>, 617 F.3d 233, 249 (3d Cir. 2010)).  Rule 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by [the]

10.)  Specifically, the Government introduced photos and surveillance video of the Aya's Pizza robbery showing Petitioner wearing jeans and shoes similar to those worn by one of the Peralta robbers ("the shoe identity evidence").  (See Doc. No. 154 at 254-59.)[7]  To highlight this similarity, the shoe identity evidence was compared with the Peralta robbery surveillance video and the photos of Petitioner's seized items.  (See id. at 254-63.)

To ensure that the jury would not improperly find Petitioner guilty of the Peralta and Golden Kingdom robberies based on his commission of the Aya's Pizza robbery, the Court twice gave the following limiting jury instruction:

> You have heard testimony that [Petitioner] committed certain crimes and bad acts related to the Aya's Pizza . . . robbery prior to the charges being brought in this case. This evidence of other acts and prior crimes was admitted only for limited purposes.
>
> You may not consider this evidence as proof that [Petitioner] committed the charged offenses in regard to the robberies of Peralta Grocery and Golden Kingdom II Restaurant.  You may only consider this evidence for the purpose of deciding whether the identity of . . . [Petitioner] in the charged crimes is accurate and to determine the credibility of witness Maleek Brown.  Do not consider this evidence for any other purpose.

---

danger of . . . unfair prejudice . . . ."  Fed. R. Evid. 403.

Before trial, the Court ruled that the photos and surveillance video of the Aya's Pizza robbery were admissible under Rule 404(b) for the limited purposes of (1) establishing Petitioner's identity, and (2) corroborating the testimony of co-conspirator Brown concerning details Petitioner had shared with him about the Aya's Pizza robbery.  (See Doc. Nos. 152 at 6-23; 154 at 5:3-10; 228 at 5-6.)  In doing so, the Court determined that, pursuant to Rule 403, the probative value of the evidence of the Aya's Pizza robbery would not be substantially outweighed by the danger of unfair prejudice.  (See Doc. Nos. 152 at 7; 156 at 7:25-8:22.) Regarding the second and fourth elements of the test set forth in United States v. Green, 617 F.3d 233 (3d Cir. 2010), Petitioner does not challenge the evidence's relevance, and as discussed infra, the Court gave a limiting jury instruction both during the trial and again during the final jury instruction to ensure the jury's proper use of the evidence.  (See Doc. Nos. 154 at 58:6-59:7; 156 at 104:9-105:4.)  Petitioner challenged the admissibility of this evidence on appeal, and the Third Circuit Court of Appeals held it was admissible.  See Jones, 737 F. App'x at 73.

[7]   The photos depicted Petitioner "wearing a pair of blue jeans with white patches" and "a pair of black sneakers with a neon yellow stripe."  (Doc. No. 160 at 4.)

Of course, it is for you to determine whether you believe this evidence and, if you do believe it, whether you accept it for the purpose offered. You may give it such weight as you feel it deserves but only for the limited purpose that I described to you.

(Doc. No. 156 at 104:9-105:4; see also Doc. No. 154 at 58:6-59:7.)

After the close of evidence, the jury found Petitioner guilty of the crimes relating to the Peralta robbery (Counts I, II, and III), but not guilty of the crimes relating to the Golden Kingdom robbery (Counts VI and VII). (See Doc. Nos. 138; 156 at 168:16-171:17.)

**B.** **Guilty Plea Colloquy**

On February 25, 2014, the morning of trial, Petitioner entered his guilty pleas to Counts IV and V of the Superseding Indictment regarding the Aya's Pizza robbery. (See Doc. Nos. 127; 152 at 23:21-28:8.) He was questioned by the Court in accordance with Federal Rule of Criminal Procedure 11(b). (See Doc. Nos. 152 at 24-56; 210 at 14.) The Court found that Petitioner understood the prerequisites to pleading guilty under Rule 11(b). (See Doc. Nos. 152 at 56-57; 210 at 14-15.) In addition, the transcript of Petitioner's plea colloquy on Counts IV and V shows that:

1. Petitioner acknowledged that he thoroughly discussed pleading guilty with his lawyer, had enough time to discuss it with his lawyer, and was fully satisfied with his lawyer (see Doc. No. 152 at 28:4-10);[8]

2. the Court thrice asked Petitioner if he wished to plead guilty and ensured that he was pleading guilty of his own free will (see id. at 30:1-6, 43:11-16, 57:24-58:5);

---

[8] At the time Petitioner entered his guilty pleas, he was represented by Thomas Fitzpatrick, Esquire, his court-appointed attorney ("Trial Counsel"). Later on, Mr. Fitzpatrick withdrew his appearance and the Court appointed attorney Jeremy C. Gelb, Esquire, to represent Petitioner ("Post-Trial Counsel"). See supra Section II.C. At this point, Mr. Gelb is still attorney of record on behalf of Petitioner. The 2255 Motion, however, was filed pro se.

3. the Court advised Petitioner that he faced (1) a statutory maximum sentence of 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment on Count IV (18 U.S.C. § 1951(a)), and (2) a consecutive mandatory minimum sentence of seven years' imprisonment, a statutory maximum sentence of life imprisonment, a five-year period of supervised release, a $250,000 fine, and a $100 special assessment on Count V (18 U.S.C. § 924(c)(1)) (see id. at 32:15-33:16);[9]

4. Petitioner said that he understood the consecutive mandatory minimum and statutory maximum sentence he faced on each of the Counts to which he was pleading guilty (see id. at 34:2-7);

5. the Court apprised Petitioner of his trial rights and ensured that he understood that he would be giving up those rights if he pled guilty (see id. at 39:11-43:16);

6. the Court explained to Petitioner the offenses with which he was charged in Counts IV and V and the elements of each offense (see id. at 43:17-24, 44:13-49:9);

7. the Government recited the facts that it would seek to prove at trial, and Petitioner admitted those facts were true (see id. at 49:10-52:12); and

8. later during the plea colloquy, Petitioner's lawyer again advised Petitioner regarding the mandatory minimum sentence that he faced (see id. at 53:13-56:23).

## C. Post-Trial Motions and Appointment of New Counsel

On March 27, 2014, Petitioner filed a pro se Motion for New Counsel, detailing concerns that his court-appointed attorney, Thomas O. Fitzpatrick, Esquire ("Trial Counsel"), had not yet

---

[9] The Court also advised Petitioner as to the total minimum and maximum sentence that he faced on both Counts, which was a consecutive mandatory minimum sentence of seven years' imprisonment, a statutory maximum sentence of life imprisonment, a five-year period of supervised release, a $500,000 fine, and a $200 special assessment. (See Doc. No. 152 at 33:17-34:7.)

visited him at the Federal Detention Center ("FDC") to discuss the filing of post-trial motions despite previously assuring Petitioner that he would do so. (Doc. No. 141.) On April 29, 2014, the Court held a hearing at which it orally denied the Motion and instructed Trial Counsel to visit Petitioner later that week. (See Doc. Nos. 142; 150; 163; 245 at 7:15-8:19.)

Thereafter, on July 21, 2014, Trial Counsel filed a Motion for New Trial ("the First Motion for New Trial"), alleging insufficient evidence to sustain the convictions and prosecutorial misconduct. (Doc. No. 158.) The prosecutorial misconduct argument was based upon allegations that (1) "throughout the pendency of the trial[, the prosecution] unlawfully vouched" for the credibility of Government witnesses Brown and King; and (2) the introduction of the shoe identity evidence from the Aya's Pizza robbery violated Federal Rules of Evidence 403 and 404(b) because it led the jurors to improperly find Petitioner guilty of the Peralta robbery based on his commission of the Aya's Pizza robbery. (Id. at 6.)

On August 18, 2014, the Court denied the First Motion for New Trial. (Doc. Nos. 160-61.) In an Opinion issued that day, the Court held that Petitioner failed to establish prosecutorial misconduct based on improper vouching and introduction of the shoe identity evidence, stating as follows:

> [Petitioner] has not established impermissible vouching. At trial, the prosecutor did not assure the jury that her witnesses were credible, let alone claim personal knowledge or any other information concerning their credibility. Accordingly, the prosecutor did not vouch for witness credibility.
>
> . . .
>
> [Regarding the shoe identity evidence,] the Government introduced evidence of the Aya's Pizza robbery, a crime committed by [Petitioner], for the purpose of establishing his identity under Rule 404(b) . . . . Specifically, [it] used surveillance photographs from the Aya's Pizza robbery to show that similar shoes and jeans were worn by one of the robbers in the Peralta robbery.
>
> The Government also used the Aya's Pizza robbery to establish the credibility of

Government witness Maleek Brown. Brown, who participated in the Peralta robbery but not the Golden Kingdom robbery, testified that [Petitioner] told him he had committed both the Aya's Pizza robbery and the Golden Kingdom robbery. (Doc. No. 153 at 163:4-168:4.) Therefore, [Petitioner's] commission of the Aya's Pizza robbery was not introduced to establish [Petitioner's] propensity to commit robbery. Id.

Additionally, the Court gave the following limiting jury instruction both during the trial and again during the final jury instruction to ensure the jury's proper use of the evidence:

> You have heard testimony that [Petitioner] committed certain crimes and bad acts related to the Aya's Pizza . . . robbery prior to the charges being brought in this case. This evidence of other acts and prior crimes was admitted only for limited purposes.

> You may not consider this evidence as proof that [Petitioner] committed the charged offenses in regard[s] to the robberies of Peralta Grocery and Golden Kingdom II Restaurant. You may only consider this evidence for the purpose of deciding whether the identity of . . . [Petitioner] in the charged crimes is accurate and to determine the credibility of witness Maleek Brown. Do not consider this evidence for any other purpose.

(Doc. Nos. 156 at 104[;] 154 at 58.) The Government's use of the Aya's Pizza robbery evidence was permissible for the limited purpose of establishing identity and assessing witness credibility.

. . .

To the extent [Petitioner] is arguing that the Government's closing statements to the jury were improper, the Court finds that the prosecutor did not make improper statements during her closing argument, and also notes that limiting instructions were given to the jury concerning counsels' statements during closing arguments.

(Doc. No. 160 at 8-10 & 10 n.4) (tenth alteration in original).

On November 7, 2014, Petitioner, appearing in court for his scheduled sentencing, moved for new counsel for the second time. (See Doc. Nos. 176, 178.) Trial Counsel requested to withdraw from the case and described for the Court his efforts in representing Petitioner up to that point. (See Doc. No. 247 at 4:15-6:11.) Specifically, Trial Counsel stated that, pursuant to the Court's instruction at the April 29, 2014 hearing, he met with Petitioner to discuss the filing of

post-trial motions.  (See id. at 4:20-21.)  Trial Counsel further explained that he ordered and reviewed the trial transcripts and filed the First Motion for New Trial "on every basis that [Petitioner] instructed [him] to do so upon" and on every basis that Trial Counsel "thought . . . there was even a scintilla of merit for a claim . . . ."  (Id. at 5:13-21.)

Despite Trial Counsel's detailed efforts, Petitioner expressed at the November 2014 hearing that he felt unable to participate in his post-trial defense, as he had not received any mailings relating to the First Motion for New Trial, including the Court's August 18, 2014 decision denying that Motion (Doc. Nos. 160-61), or any of the sentencing documents before the Court.  (See Doc. No. 247 at 5:22-6:1, 6:12-25, 7:6-8:7.)

Based on Petitioner's representations at the November 2014 hearing, his young age, and the lengthy sentence he was facing, the Court allowed Trial Counsel to withdraw his appearance and continued Petitioner's sentencing.  (See id. at 21:12-21.)[10]

Thereafter, on November 18, 2014, the Court appointed attorney Jeremy C. Gelb, Esquire, ("Post-Trial Counsel") to represent Petitioner.  (Doc. No. 179.)  On February 1, 2016, Post-Trial Counsel filed a Nunc Pro Tunc Motion for New Trial ("the Second Motion for New Trial") in which he "supplement[ed] prior counsel's grounds for a new trial" by expanding upon the arguments originally raised in the First Motion for New Trial concerning the Aya's Pizza robbery shoe identity evidence.  (Doc. No. 194 at 1; see also Doc. No. 194-1.)  No additional arguments were included in the Second Motion for New Trial.  (See ids.)  On February 29, 2016, the Court denied the Second Motion for New Trial "for the reasons stated in the Court's Opinion dated

---

[10]  In addition, the Court orally directed that Petitioner receive a copy of the Presentence Investigation Report, Sentencing Memorandums, trial transcripts, all filings related to the First Motion for New Trial, and the Court's August 18, 2014 Opinion and Order denying that Motion.  (See Doc. No. 247 at 17:5-19:8, 20:11-21:1.)  The Court also afforded Petitioner the opportunity to file an out-of-time motion for new trial.  (See id. at 16:14-17:5, 19:9-15.)

August 18, 2014 (Doc. No. 160)."  (Doc. No. 198.)

On March 30, 2016, Petitioner filed a Motion to Withdraw his Guilty Plea, and on June 17, 2016, he filed a pro se Motion for Acquittal with Respect to Count III of the Superseding Indictment.  (Doc. Nos. 200-01.)  On January 19, 2017, the Court denied both Motions in an extensive Opinion analyzing Petitioner's guilty plea colloquy on the morning of trial.  (Doc. Nos. 210-11.)  In that Opinion, the Court held that Petitioner's guilty pleas to the crimes associated with the Aya's Pizza robbery (Counts IV and V) comported with the requirements of Federal Rule of Criminal Procedure 11 and were knowingly and voluntarily entered.  (See Doc. No. 210 at 14-15.)  The Court also noted that during the plea colloquy, Petitioner "acknowledged that he thoroughly discussed pleading guilty with [Trial Counsel], had enough time to discuss it with [Trial Counsel], and was fully satisfied with" Trial Counsel's representation.  (Id. at 15; see also Doc. No. 152 at 28:4-11.)  In addition, the Court determined that Trial Counsel's representation during the entry of Petitioner's guilty pleas "was not constitutionally ineffective."  (Doc. No. 210 at 34.)

### D.  Sentence and Appeal

On July 11, 2017, the Court sentenced Petitioner to a total of 408 months' imprisonment, followed by five years' supervised release, for the crimes relating to the robberies of Aya's Pizza and Peralta (Counts I through V).  (Doc. No. 217.)[11]  On July 21, 2017, Petitioner filed a Notice of Appeal (Doc. No. 218), and on June 11, 2018, the Third Circuit Court of Appeals affirmed his

---

[11]  As noted in note 4, supra, pursuant to the language of 18 U.S.C. § 924(c) in effect at the time Petitioner was sentenced, he faced a mandatory minimum sentence of 32 years' imprisonment for his convictions relating to the Peralta robbery (Count III) and the Aya's Pizza robbery (Count V).  See United States v. Walker, 990 F.3d 316, 325 (3d Cir. 2021) ("Hobbs Act robbery is . . . a crime of violence for purposes of § 924(c) . . . ."); id. at 326; 18 U.S.C. § 924(c)(1)(A)(ii) (7-year consecutive mandatory minimum sentence for brandishing a firearm during and in relation to any crime of violence); § 924(c)(1)(C)(i) (25-year consecutive mandatory minimum sentence for second § 924(c) violation).

conviction and sentence.  See United States v. Jones, 737 F. App'x 68 (3d Cir. 2018).

On appeal, Petitioner unsuccessfully raised two issues, both of which he now renews in the 2255 Motion.  First, Petitioner claimed that the Court erred in admitting the shoe identity evidence from the Aya's Pizza robbery under Federal Rules of Evidence 403 and 404(b).  See id. at 70.  In affirming this Court's ruling, the Third Circuit held:

> The District Court properly allowed the Government to introduce evidence concerning [Petitioner's] involvement in the Aya's robbery for two non-propensity purposes: (1) to establish [Petitioner's] identity as the Peralta robber and (2) to corroborate the credibility of Brown's testimony identifying [Petitioner] as the Peralta robber. . . .  The District Court did not abuse its discretion in determining that this value was not substantially outweighed by the risk of unfair prejudice arising from the jury being apprised that [Petitioner] committed the Aya's robbery, to which [Petitioner] had admitted.  Especially given the District Court's two cautionary instructions, which we presume the jury followed, we have little "concern that the jury would have used this evidence to draw a propensity inference."

Id. at 71-72 (footnote omitted) (citations omitted).[12]

Second, Petitioner claimed that the Court improperly admitted "Detective Wilson's lay opinion testimony explaining the video demonstration Wilson presented at trial" under Federal Rule of Evidence 701.[13]  (Doc. No. 228 at 9.)  The Third Circuit also rejected this claim:

> [Petitioner] . . . contends that Detective Wilson . . . violated Rule 701 by giving improper opinion testimony that went to the ultimate question. . . .  Wilson seemed to give his opinion that the depiction of the color of [Petitioner's] shoes (worn by

---

[12]  The Third Circuit also noted that its presumption that the jury followed the Court's two limiting instructions "is especially strong because the jury acquitted [Petitioner] of the Golden Kingdom robbery, indicating that it followed its instructions and did not draw the propensity inference that, once a robber, [Petitioner] was guilty of all the charged robberies."  Jones, 737 F. App'x at 72 n.3.

[13]  Rule 701 provides that a lay witness, meaning a witness who is not testifying as an expert under Rule 702, may testify about their opinion so long as the opinion is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

Wilson) in the Peralta reenactment video matched the color of the shoes worn by the Peralta robber in the surveillance video.

. . .

[Specifically,] Wilson[] remark[ed] that the color of the shoes from his reenactment was "just spot on" with the color in the robbery video[.] [T]he record reflects that the Government immediately clarified that Wilson was not opining about whether the shoes were indeed the same, but just explaining the procedure that he undertook to make the comparison. When the reenactment video was played, the Government again confirmed that the purpose of the comparison "was just to show . . . the color of the shoe?" and Wilson replied that he performed the comparison because "the color represented from what's recorded on the video isn't quite represented in what's in real life." . . . Wilson did not thereafter opine about whether [Petitioner's] shoes were the ones depicted in the Peralta video. The District Court ruled that Wilson's "testimony doesn't reach the point where he's telling the jury that, in my opinion, [the shoes are] the same," . . . and nonetheless gave the jury a limiting instruction that Wilson's testimony was for the purpose of comparison only and that the ultimate decision rested with the jury.

. . .

Here, in light of the prosecutor's clarifications and the court's limiting instruction, the District Court did not abuse its discretion in concluding that Wilson's testimony did not stray beyond Rule 701's limitations[.]

Regardless, any error was harmless. . . . As noted, the . . . statement was immediately recanted and clarified; the District Court gave a proper limiting instruction; and the Government's case regarding the Peralta robbery was very strong based on cooperating witnesses and video evidence. We have little doubt that Wilson's comments did not affect the jury's verdict.

Jones, 737 F. App'x at 73-74 (ninth alteration in original) (citations omitted).[14]

### E.     The Instant 2255 Motion and the Government's Response

On May 1, 2019, Petitioner filed the instant 2255 Motion (Doc. No. 224), and on June 17,

2019, the Government filed a Response to the Motion (Doc. No. 228). In each of the four Grounds

---

[14]   On appeal, Petitioner also claimed that a second statement by Detective Wilson in which he "identified the suspect in the Peralta surveillance video as 'the defendant'" was improper opinion testimony that went to the ultimate question, in violation of Rule 701. Jones, 737 F. App'x at 73. The Third Circuit rejected this argument, holding that this Court "did not abuse its discretion by permitting the challenged testimony and that, even if it did, any error was harmless." Id. Petitioner does not renew this claim in the 2255 Motion.

raised in the Motion, Petitioner makes generalized, sweeping allegations without providing any context or factual support.  (See Doc. No. 224 at 5-10.)  The Government accurately summarizes it as "entirely conclusory.  [Petitioner] presents no factual basis for any of his claims.  The [M]otion accordingly is without merit and should be summarily dismissed."  (Doc. No. 228 at 12.)  And the Court, being familiar with the record in this case, has construed the Motion as liberally as possible in order to resolve each argument, however sparsely asserted in the Motion.

The 2255 Motion is now ripe for disposition.  For reasons that follow, the Court will deny the Motion (Doc. No. 224).

## III.   STANDARD OF REVIEW

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution."  Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002).  Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside or correct the sentence" where, inter alia, the sentence imposed was in violation of the Constitution or laws of the United States or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

In considering a § 2255 motion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)); see also United States v. Williams, No. 15-1820, 2016 WL 930682, at *1 (E.D. Pa. Mar. 10, 2016) (citation and quotations omitted) ("The court is to construe a prisoner's pro se pleading liberally, but vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation.").

## IV.    ANALYSIS

As noted earlier, Petitioner argues that his sentence should be vacated on four grounds: (1) prosecutorial misconduct ("Ground 1"); (2) violation of Federal Rules of Evidence 403, 404(b), and 701 ("Ground 2"); (3) ineffective assistance of counsel ("Ground 3"); and (4) inadmissible testimony from government witnesses Jonte King and Maleek Brown ("Ground 4").  (See Doc. No. 224 at 5-10.)[15]  Each Ground will be discussed in turn.

### A.    Ground 1: Petitioner's Prosecutorial Misconduct Claims Will Be Denied

First, Petitioner alleges that the prosecution prejudiced his right to a fair trial by engaging in the following misconduct:

1)  . . . [Eliciting] prejudicial testimony from several witnesses during trial that denied [Petitioner] to a fair trial[;]

2)  . . . lead[ing] and coach[ing] witnesses during trial testimony[;]

3)  . . . vouch[ing] for co-conspirator to crime and government witness during trial[;]

4)  . . . introduc[ing] statement that government witness claim's [sic] to have never said[;]

5)  . . . [eliciting] testimony from witness during trial [where the prosecutor] know's [sic] there is edvidence [sic] to the contrary[;]

6)  . . . introduc[ing] prior bad act so as to prejudice [Petitioner] during trial[; and]

7)  . . . permitt[ing] perjured testimony to go on without correction.

(Id. at 5.)

### 1.    Prosecutorial Misconduct Claim Based on Witness Vouching Has Been Procedurally Defaulted

Under Ground 1, Petitioner claims that the prosecutor engaged in misconduct by

---

[15]  As mentioned supra, Petitioner's 2255 Motion almost entirely consists of lists of conclusory allegations without any factual basis.  (See Doc. No. 224 at 5-10.)  The Court, of course, must construe the pro se Motion liberally.  That being said, the Court has gone beyond this mandate in its analysis of Petitioner's claims in order to rule on each allegation noted.

"vouch[ing] for [the credibility of a] co[-]conspirator to [the] crime and government witness during trial." (Id. at 5.)  Witness vouching is when a prosecutor improperly "(1) assures the jury that the testimony of a government witness is credible, and (2) bases his [or her] assurance on either his [or her] claimed personal knowledge or other information not contained in the record."  United States v. Dollson, 609 F. App'x 108, 111 (3d Cir. 2015) (quotations omitted) (quoting United States v. Lore, 430 F.3d 190, 211 (3d Cir. 2005)).  Petitioner raised this claim in the trial court but never on appeal.  (See Doc. Nos. 158 at 6; 160 at 8); supra Section II.C.

When claims are raised in the trial court but not on appeal, they are considered to be procedurally defaulted.  See Hodge v. United States, 554 F.3d 372, 378-79 (3d Cir. 2009).  Procedurally defaulted claims may not be raised in a § 2255 Motion.  See United States v. Travillion, 759 F.3d 281, 288 n.11 (3d Cir. 2014) ("[I]ssues which should have been raised on direct appeal may not be raised [in] a § 2255 motion.").

Here, Petitioner has procedurally defaulted on his claim of prosecutorial misconduct based on witness vouching.  Petitioner raised this argument in his First Motion for New Trial.  (See Doc. No. 158 at 6.)  The Court denied this claim on the merits in the August 18, 2014 Opinion.  (See Doc. No. 160 at 8.)  Petitioner did not raise on appeal his claim of prosecutorial misconduct based on witness vouching.  Because Petitioner's prosecutorial misconduct claim based on witness vouching was ruled on by the district court and never appealed, it has been procedurally defaulted.

Despite this rule of procedural default, there are two exceptions to it: (1) actual innocence; and (2) cause and prejudice.  Neither is present here.  Under the first exception, Petitioner may overcome his procedural default on issues not directly appealed by presenting "new reliable evidence," Huggins v. United States, 69 F. Supp. 3d 430, 458 (D. Del. 2014), "that he is actually innocent of the crime for which he was convicted . . . ."  Hodge, 554 F.3d at 379.  In the 2255

Motion, Petitioner does not claim to be actually innocent of the crime for which he was convicted at trial—the Peralta robbery. See, e.g., Parkin v. United States, 565 F. App'x 149, 151 (3d Cir. 2014). Nor does Petitioner point to "new reliable evidence of his actual innocence" to support his improper vouching claim under Ground 1. Huggins, 69 F. Supp. 3d at 458. Therefore, the actual innocence exception to procedural default is inapplicable.

Under the second exception, Petitioner may overcome his procedural default on issues not directly appealed by demonstrating "that there is a valid cause for the default, as well as prejudice resulting from the default." Hodge, 554 F.3d at 379. To establish "cause," Petitioner "must show that some objective factor external to the defense impeded counsel's efforts[] to raise the claim," such as "interference by officials, a showing that the factual or legal basis for a claim was not reasonably available to counsel, [or] ineffective assistance of counsel." United States v. Pelullo, 399 F.3d 197, 223 (3d Cir. 2005) (quotations omitted) (first quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991); then quoting Wise v. Fulcomer, 958 F.2d 30, 34 n.9 (3d Cir. 1992)).

Here, Petitioner has not shown cause for his failure to raise on appeal his claim of improper witness vouching by the prosecution. In the 2255 Motion, Petitioner generally asserts that Post-Trial Counsel was ineffective for failing to appeal his prosecutorial misconduct claims to the Third Circuit. (See Doc. No. 224 at 5, 10.) But, as noted above, in the August 18, 2014 Opinion, the Court rejected on the merits Petitioner's prosecutorial misconduct claim based on witness vouching. (See Doc. No. 160 at 8.) Thus, while constitutionally ineffective assistance can excuse procedural default, "counsel cannot be . . . ineffective for failing to raise a meritless claim." Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); see also United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Therefore, Post-Trial Counsel was not

ineffective for failing to appeal the Court's decision denying this claim to the Third Circuit and Petitioner has not shown cause to excuse his procedural default.[16]

Because Petitioner's prosecutorial misconduct claim based on witness vouching has been procedurally defaulted, and he has not shown cause and prejudice for the default, this claim will be denied.

### 2. Prosecutorial Misconduct Claim Based on Introduction of Prior Bad Act Evidence Fails Because the Prior Acts Were Admissible

Under Ground 1, Petitioner claims that the prosecutor engaged in misconduct by violating at trial Federal Rules of Evidence 403 and 404(b)[17] by "introduc[ing evidence of a] prior bad act" committed by Petitioner (the Aya's Pizza robbery) "so as to prejudice [him] . . . ." (See Doc. No. 224 at 5.) The claim about the introduction of the prior bad acts was rejected in Petitioner's direct appeal to the Third Circuit, see Jones, 737 F. App'x at 70-73, and therefore the Government did not engage in misconduct in introducing this evidence.

Generally, a petitioner may not raise claims in a § 2255 motion that were previously rejected on direct appeal. See United States v. Scott, 664 F. App'x 232, 237 (3d Cir. 2016) ("[A] § 2255 proceeding may not be used to relitigate questions that were raised and [rejected] on direct appeal."). However, there are four exceptions to this rule. See id. A claim may be relitigated in a § 2255 motion if a petitioner can prove the existence of one of the following: (1) "newly discovered evidence that could not reasonably have been presented at the original trial," (2) "a change in applicable law," (3) "incompetent prior representation by counsel," or (4) "other circumstances

---

[16] Absent a showing of cause excusing procedural default, a court need not address the issue of prejudice. See United States v. Pelullo, 399 F.3d 197, 223-24 (3d Cir. 2005). Because Petitioner has not shown cause to excuse his procedural default on his claim of improper witness vouching by the prosecution, the Court need not address whether he would have been prejudiced by his procedural default on this claim.

[17] See supra note 6.

indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims." Id. (quoting United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979)).

Here, Petitioner's claim of prosecutorial misconduct based on the introduction of the Aya's Pizza robbery evidence will be denied because the challenge to the introduction of the prior bad acts was previously rejected on direct appeal and none of the exceptions permitting its reconsideration apply here. In his 2255 Motion, Petitioner even concedes that this claim was rejected on direct appeal. (See Doc. No. 224 at 3) ("[T]he [T]hird [C]ircuit . . . [d]enied [appeal based on violation of] Federal [R]ule[s] of [E]dvidence [sic] 404(b) . . . . [a]nd . . . 403 . . . .").[18] He does not, however, present new evidence or authority or other circumstances that would permit the relitigation of these claims in the instant context. (See id. at 6-7.) Although Petitioner generally asserts in the Motion that his counsel was ineffective, as discussed in Section IV.C, infra, the Court has determined that neither of Petitioner's two court-appointed attorneys provided ineffective assistance. (See id. at 8-10.) Accordingly, this claim under Ground 1 will be denied.

### 3. Prosecutorial Misconduct Claim Based on Leading and Coaching Government Witnesses Belies the Record

Next, Petitioner claims that the prosecutor engaged in misconduct by "lead[ing] and coach[ing] witnesses during [their] trial testimony." (Id. at 5.) Construing the 2255 Motion in the light most favorable to Petitioner, the Court believes that he meant for this allegation to correspond with his claim under Ground 4 ("Inadmissible testimony from government witnesses Jonte King

---

[18]   See also Jones, 737 F. App'x at 71-72 ("The . . . Court properly allowed the Government to introduce evidence [under Rule 404(b)] concerning [Petitioner's] involvement in the Aya's robbery for two non-propensity purposes: (1) . . . identity . . . and (2) . . . corroborat[ion] . . . of [co-conspirator] Brown's testimony . . . . [and] did not abuse its discretion [under Rule 403] in determining that this value was not substantially outweighed by the risk of unfair prejudice arising from the jury being apprised that [Petitioner] committed the Aya's robbery, to which [Petitioner] had admitted.").

and Maleek Brown") in which he asserts that King "only procedes [sic] with [his] testimony through coaching from [the] prosecutor." (Id. at 9); see infra Section IV.D.[19] This claim will be dismissed because it belies the record.

A district court may dismiss a § 2255 motion without an evidentiary hearing if "the allegations [contained therein] cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005) (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)); see also United States v. Schwartz, 925 F. Supp. 2d 663, 691 (E.D. Pa. 2013) (district court may dispose of claims that belie the record "without further consideration").

Here, the transcript of co-conspirator King's trial testimony contradicts Petitioner's allegation that the prosecutor improperly led and coached his testimony. In contrast, the transcript shows that King was able to testify from his memory on direct examination regarding the robberies and conspiracy in which he admittedly was involved. (See Doc. No. 154 at 150:13-16, 202:17-203:4.)[20] Moreover, the record reveals that the Court sustained objections by Trial Counsel based on Federal Rule of Evidence 611(c), which provides that "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." (See id. at 161:16-21, 195:11-18, 190:16-24, 195:21-25.) Thus, more than once during the Government's direct examination of King, the Court ruled for Petitioner on his objections to the prosecutor's use of leading questions. The transcript also shows that the Government adhered to such rulings in rephrasing the question and moving on from particular lines of inquiry. (See id. at 161:13-162:12,

---

[19]  Even if in this claim Petitioner meant to refer to the testimony of both King and Brown, or any other Government witness, the claim still would be dismissed. The record belies any allegation that the prosecution improperly led and coached its witnesses at trial.

[20]  (See also Doc. No. 154 at 147-208.)

195:11-196:2.)  Accordingly, Petitioner's claim of improper leading and coaching witness testimony by the prosecution contradicts the record and will be dismissed without further consideration.

### 4.    Four Remaining Prosecutorial Misconduct Claims are Vague and Conclusory or Otherwise Belie the Record

Finally, Petitioner asserts that the prosecutor engaged in misconduct "during trial" by:

1)  . . . [Eliciting] prejudicial testimony from several witnesses . . . that denied [Petitioner] to a fair trial[;]

. . .

4)  . . . introduc[ing] statement that government witness claim's [sic] to have never said[;]

5)  . . . [eliciting] testimony from witness . . . [where the prosecutor] know's [sic] there is edvidence [sic] to the contrary[; and]

. . .

7)  . . . permitt[ing] perjured testimony to go on without correction.

(Doc. No. 224 at 5.)  These claims will be denied because they are too vague and conclusory to warrant relief or because they otherwise are belied by the record.

A district court may dispose of, "without further investigation," (1) "vague and conclusory allegations contained in a § 2255 petition;" and (2) claims that belie the record.  <u>United States v. Thomas</u>, 221 F.3d 430, 437 (3d Cir. 2000); <u>see also</u> <u>Schwartz</u>, 925 F. Supp. 2d at 691.

First, Petitioner's claims that the prosecutor engaged in misconduct by (1) "[eliciting] prejudicial testimony from several witnesses . . . that denied [Petitioner] . . . a fair trial[;]" (2) "introduc[ing a] statement that [a] government witness claim's [sic] to have never said [; and]" (3) "[eliciting] testimony from [a] witness . . . [where the prosecutor] know's [sic] there is edvidence [sic] to the contrary" (Doc. No. 224 at 5) are too "vague and conclusory" to warrant

further investigation. <u>Thomas</u>, 221 F.3d at 437.[21] As to his assertion that the prosecutor "[elicited] prejudicial testimony from several witnesses[,]" Petitioner does not identify specific witnesses or portions of the trial record to which he is referring. (Doc. No. 224 at 5.) Nor does he generally describe the substance of any witness' testimony. Similarly, regarding his allegations that the prosecutor "introduce[d a] statement that [a] government witness claim's [sic] to have never said" and "[elicited] testimony from [a] witness . . . [where the prosecutor] know's [sic] there is evdidence [sic] to the contrary[,]" Petitioner fails to point to a specific statement or piece of evidence to support these claims. (<u>Id.</u>) Thus, these claims fail for lack of specificity and will be summarily dismissed as "vague and speculative [allegations] . . . without factual support." <u>Schwartz</u>, 925 F. Supp. 2d at 691.

Second, Petitioner's final claim under Ground 1 that the prosecutor improperly "permitted perjured testimony to go on without correction" belies the record. (Doc. No. 224 at 5.) Construing the 2255 Motion in the light most favorable to Petitioner, the Court believes that he meant for this claim to correspond with his allegations under Ground 4 ("Inadmissible testimony from government witnesses Jonte King and Maleek Brown") in which he accuses King and Brown of lying under oath while testifying at trial. (<u>See</u> <u>id.</u> at 9) ("Brown admit[ted] to lying under oath . . . ."; "King found lying under oath . . . ."); <u>infra</u> Section IV.D. Nothing in the record, however, supports these bald assertions. Rather, the transcript of King and Brown's trial testimony

---

[21]  <u>See</u> <u>also</u> <u>United States v. Thomas</u>, 221 F.3d 430, 437-38 (3d Cir. 2000) ("We certainly agree that more than a few of Thomas's twenty-six grounds appear to be quite conclusory and too vague to warrant further investigation. <u>See, e.g.</u>, Issues Five, Fourteen and Fifteen (claims involving the alleged failure to interview and to call certain witnesses, with no potential witnesses identified)."); <u>United States v. Colon</u>, No. 09-297, 2013 WL 12222606, at *1 n.1 (E.D. Pa. Aug. 2, 2013) (quoting <u>Thomas</u>, 221 F.3d at 437) (summarily dismissing claims as "too 'conclusory and vague to warrant further investigation'" where petitioner failed to identify particular witness or piece of evidence underlying claim).

contradicts this claim. At trial, both King and Brown indicated multiple times that they were being honest in their testimony, as explicitly required by their plea agreements in this case. (See Doc. No. 154 at 28:18-23, 33:17-34:5, 36:24-37:3, 37:8-13, 49:12-14, 50:10-14, 196:4-25, 200:1-8, 242:16-17.) Additionally, both witnesses confirmed that they understood the significance of testifying truthfully and the consequences each would face for failing to do so. (See Doc. Nos. 153 at 189:1-21; 154 at 21:15-23:20, 28:18-23, 49:12-14, 196:4-25, 200:1-12.) And most importantly, Petitioner does not offer any evidence to support his claims of their untruthfulness.

For all these reasons, Petitioner's remaining prosecutorial misconduct claims will be denied without further consideration.

**B.     Ground 2: Petitioner's Claims for Alleged Violations of Federal Rules of Evidence 404(b), 403, and 701 Will Be Denied**

Second, Petitioner contends that the Court violated Federal Rules of Evidence 403, 404(b),[22] and 701[23] by "allow[ing]":

1)  . . . [E]xtensive edvidence [sic] of a prior bad act that prejudiced [Petitioner's] trial[;]

2)  . . . a police detective to render [a] lay opinion concerning comparisons he made between physical edvidence [sic] taken from [Petitioner] and images taken from video surveillance of crime scenes[;]

3)  . . . government [to] introduce[] police detective who is not an expert to stage edvidence [sic] in favor of prosecution, [a]nd never tell's [sic] defense that video is not that of offender[; and]

4)  . . . [p]rosecutor [to] state[] that she wants jury to know that a prior bad act was a federal crime, for reason's [sic] prejudicial to [Petitioner].

(Id. at 6.) All of the claims under Ground 2 were rejected in Petitioner's direct appeal to the Third Circuit. See United States v. Jones, 737 F. App'x 68 (3d Cir. 2018); supra Section II.D.

---

[22]  See supra note 6.

[23]  See supra note 13.

As discussed above, a petitioner may not raise claims in a § 2255 motion that were previously rejected on direct appeal. See Scott, 664 F. App'x at 237. A claim, however, may be relitigated in a § 2255 motion if a petitioner can prove the existence of one of the following four exceptions: (1) "newly discovered evidence that could not reasonably have been presented at the original trial," (2) "a change in applicable law," (3) "incompetent prior representation by counsel," or (4) "other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims." Id. (quoting Palumbo, 608 F.2d at 533).

Here, Petitioner's claims under Ground 2 will be denied because they were previously rejected on direct appeal and none of the exceptions permitting their reconsideration apply here. First, Petitioner's argument that the Court violated Rules 403 and 404(b) by admitting evidence that he committed a prior crime (the Aya's Pizza robbery) fails for the same reasons discussed in Section IV.A.2, supra—namely, that this claim was rejected on direct appeal and Petitioner does not meet any of the exceptions that would permit its relitigation in the present context.

Second, Petitioner's claims that the Court violated Rule 701 by allowing Detective Wilson "to render a lay opinion" at trial concerning (1) "stage[d] evdidence [sic] in favor of [the] prosecution," i.e., the video of Detective Wilson conducting a walk-through at the scene of the Peralta robbery ("the reenactment video"), without clarifying "that [the] video [was] not . . . of [the] offender; and (2) "comparisons he made between" the color of the shoes seized from Petitioner and the color of the shoes appearing in "images taken from . . . surveillance [video] of [the] crime scenes"[24] also were rejected on appeal. (Doc. No. 224 at 6.)[25] Specifically, the Third

---

[24] The comparison testimony to which Petitioner is referring is Detective Wilson's comment that the color of the shoes from his reenactment video was "just spot on" with the color of the shoes in the Peralta robbery surveillance video. Jones, 737 F. App'x at 74.

[25] The Court notes that in the 2255 Motion, Petitioner admits raising on direct appeal an alleged

Circuit held that, "in light of the prosecutor's clarifications and the court's limiting instruction," this Court "did not abuse its discretion by permitting the challenged testimony and . . ., even if it did, any error was harmless." Jones, 737 F. App'x at 73-74.

In the 2255 Motion, Petitioner again fails to present new evidence or authority or other circumstances that would warrant the relitigation of these claims. While he generally asserts that his counsel was ineffective, as discussed in Section IV.C, infra, the Court has determined that neither of Petitioner's two court-appointed attorneys provided ineffective assistance. Accordingly, Petitioner's claims under Ground 2 will be denied.

**C.** **Ground 3: Petitioner's Ineffective Assistance of Counsel Claims Will Be Denied**

Third, Petitioner contends that both of his court-appointed attorneys were ineffective. (See Doc. No. 224 at 8-9.)[26] As to Trial Counsel, Petitioner alleges that he:

1) . . . [A]ctually admitted on the record that he had not defended [Petitioner] to best [sic] of his ability and wished to remove himself from the case. [Petitioner's] entered guilty plea was prejudicial to him for reason's [sic] of ineffective assistance. [A]lso [Petitioner's] trial was prejudicial because of ineffective assistence [sic][;]

2) . . . failed to investigate outside of reviewing prosecutor's file[;]

3) . . . failed to object, [sic] [to] attorney for government vouching for government witness[;]

---

violation of Rule 701 based upon the admission of "opinion [t]estimony" by a "lay witness." (Doc. No. 224 at 3.)

[26] In the 2255 Motion, Petitioner does not specify whether he is alleging ineffective assistance by Trial Counsel, Mr. Fitzpatrick, or Post-Trial Counsel, Mr. Gelb. At the time Petitioner entered his guilty pleas and went to trial, he was represented by Mr. Fitzpatrick. See supra Section II.C. After filing the First Motion for New Trial, Mr. Fitzpatrick withdrew his appearance and the Court appointed Mr. Gelb to represent Petitioner. See id.; (Doc. Nos. 178, 179.) Petitioner's first five ineffective assistance claims involve his counsel's representation during trial and only pertain to Mr. Fitzpatrick—the lawyer who represented him in entering his guilty pleas and at trial. His sixth claim alleges ineffective assistance for failure to include claims in his direct appeal and only pertains to Mr. Gelb—the lawyer who filed Petitioner's appeal in the Third Circuit. (See Doc. No. 218.)

4)  . . . failed to [subpoena] alliby [sic] for [Petitioner] after being informed by [Petitioner] of one[; and]

5)  . . . failed to motion for mistrial due to government witness [sic] perjury during trial[.]

(Id. at 8.)  As to Post-Trial Counsel, Petitioner alleges that he:

6)  . . . failed to properly file violations in [Petitioner's] direct appeal.

(Id.)

In evaluating claims of ineffective assistance of counsel in violation of the Sixth Amendment, a court must apply the two-prong test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  Under this test, counsel is presumed to have been effective unless a petitioner establishes that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.  See id. at 687.  "A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."  Id. at 668.

As discussed below, Petitioner's claims under Ground 3 fail because he has not established that his attorneys' performance was deficient and has not shown that their performance prejudiced him in entering his guilty plea and at sentencing.  The Court first will address Petitioner's ineffective assistance claims regarding Trial Counsel and then will turn to his claim regarding Post-Trial Counsel.

### 1.  Trial Counsel

#### a.  Trial Counsel's Alleged Failure to Investigate the Facts of the Government's Case and Failure to Subpoena Alibi Witness

Initially, Petitioner contends that Trial Counsel was ineffective for failing to investigate the facts of the Government's case against him beyond a review of the prosecutor's file and for not

subpoenaing an alibi witness to testify at trial after being informed about one.  (<u>See</u> Doc. No. 224 at 8.)  These claims are too vague and conclusory to establish <u>Strickland</u> prejudice.

Under the prejudice prong of the <u>Strickland</u> test, Petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the ultimate outcome."  <u>Id.</u>  Essentially, Petitioner must show that Trial Counsel's alleged error caused more than just some conceivable effect on the outcome of the proceeding.  <u>See id.</u> at 693.

It follows that vague and conclusory claims are insufficient to establish <u>Strickland</u> prejudice and may be denied without further consideration.  <u>See</u> <u>Johnson v. United States</u>, 294 F. App'x 709, 710 (3d Cir. 2008); <u>United States v. Georgiou</u>, No. 09-88, 2018 WL 9618008, at *46 (E.D. Pa. June 19, 2018); <u>Thomas</u>, 221 F.3d at 438-39.  Accordingly, in the Third Circuit, allegations of ineffective assistance based on a defendant's conclusory statements that there was a failure to perform an adequate investigation[27] and a failure to interview and call unidentified witnesses[28] cannot establish "a reasonable probability that, but for" the alleged deficient performance, "the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.  Moreover, even where a petitioner identifies a specific witness or piece of evidence that they

---

[27]  <u>See</u> <u>United States v. Kelly</u>, No. 18-492, 2019 WL 3426077, at *6 (W.D. Pa. July 30, 2019) (ineffectiveness claim alleging counsel did "not perform[] an adequate investigation" was "too conclusory to show prejudice and therefore [did] not merit further discussion."); <u>United States v. Mercer</u>, 289 F. App'x 481, 482 (3d Cir. 2008) (holding "claim that counsel was ineffective for failing to 'properly investigate any avenues of defense'" "may be too vague and conclusory to warrant further investigation").

[28]  <u>See</u> <u>Thomas</u>, 221 F.3d at 438-39 (holding "claims involving the alleged failure to interview and to call certain witnesses, with no potential witnesses identified" "appear to be quite conclusory and too vague to warrant further investigation.").

allege counsel should have presented, a "bare conclusion" that he or she was prejudiced by counsel's failure to do so cannot establish <u>Strickland</u> prejudice.  <u>Georgiou</u>, 2018 WL 9618008, at *46 (finding petitioner's "bare conclusion that he would have achieved a different result at trial if only his counsel had presented" certain records at issue was "insufficient to make a showing of the [<u>Strickland</u>] prejudice prong . . . ."); <u>see also</u> <u>Johnson</u>, 294 F. App'x at 710 (holding "vague and conclusory claim" that a witness' testimony "would have rebutted 'every material fact' and every adverse witness falls well short of establishing a 'reasonable probability' that, had he testified, 'the result of the proceeding would have been different.'").

Here, Petitioner's claims that Trial Counsel was ineffective for "fail[ing] to investigate outside of reviewing [the] prosecutor's file" and "fail[ing] to subpoena [an] alibi" witness for him about which Trial Counsel was informed (Doc. No. 224 at 8) are "too vague and conclusory" to establish a reasonable probability that, had Trial Counsel conducted additional investigation or presented some unidentified evidence, the outcome of Petitioner's trial would have been different. <u>Mercer</u>, 289 F. App'x at 482.  In the 2255 Motion, Petitioner does not point to specific evidence such as a record or a witness that Trial Counsel could have introduced at trial.  Nor does he include a single detail about an alibi that he now alleges for the first time existed.  While he contends that Trial Counsel's failure to do these things prejudiced his trial, the "bare conclusion" is not sufficient to establish "a probability sufficient to undermine confidence" in the jury's verdict.  <u>Georgiou</u>, 2018 WL 9618008, at *46; <u>Strickland</u>, 466 U.S. at 694.  Therefore, Petitioner has failed to establish prejudice and these claims will be denied.

### b. Trial Counsel's Alleged Failure to Move for Mistrial Due to Witness Perjury

Next, Petitioner argues that Trial Counsel was ineffective for failing to move for a mistrial

due to alleged perjury by government witnesses.  (See Doc. No. 224 at 8.)[29]  This claim also fails because Petitioner has not shown Strickland prejudice.

As stated previously, for an ineffective assistance claim to have merit, Petitioner must establish Strickland prejudice, which means he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  In the context of alleged witness perjury, to establish the requisite Strickland prejudice, a petitioner must (1) identify specific perjured testimony that counsel failed to address, and (2) show "why the alleged perjured testimony was material to his conviction by the jury."  Johnson, 294 F. App'x at 710 (quotations omitted); see also Georgiou, 2018 WL 9618008, at *44.

Here, Petitioner neither identifies perjured testimony by Government witnesses King and Brown nor explains "why the alleged perjured testimony was material to his conviction by the jury."  Johnson, 294 F. App'x at 710.  As discussed in Section IV.A.4, supra, the transcript of King and Brown's testimony belies Petitioner's claims that they lied under oath at trial.  Thus, Petitioner has not established that King and Brown, or any other Government witness, committed perjury at trial.  Without identifying the perjured testimony and its effect on the jury's verdict, the record conclusively establishes that Petitioner has not shown a reasonable probability that, but for Trial Counsel's failure to move for a mistrial on this basis, the jury's verdict would have been different.  Accordingly, Petitioner has not shown prejudice from this alleged failure, and this ineffective assistance claim will be denied.

---

[29] Construing the 2255 Motion in the light most favorable to Petitioner, the Court believes that he meant for this claim to correspond with his arguments under Ground 4 ("Inadmissible testimony from government witnesses Jonte King and Maleek Brown") in which he accuses King and Brown of lying under oath while testifying at trial.  (See Doc. No. 224 at 9); infra Section IV.D.

### c. Trial Counsel's Alleged Failure to Object to Prosecutor's Vouching for Government Witness

Petitioner also contends that Trial Counsel was ineffective for not objecting at trial to the Government's alleged vouching for the credibility of its witnesses. (See Doc. No. 224 at 8.) This claim fails under the deficient performance prong of the Strickland test.

Under this prong, Petitioner must demonstrate that Trial Counsel fell short of "reasonably effective assistance" by overcoming the presumption that his counsel's decisions were "sound trial strategy." Id. at 687, 689 (citation and quotations omitted). Petitioner, however, cannot overcome this presumption by asserting that Trial Counsel failed to raise this objection because, as discussed earlier, "counsel cannot be deemed ineffective for failing to raise a meritless claim." Werts, 228 F.3d at 203; see also United States v. Jackson, No. 08-731-1, 2016 WL 3014843, at *4 (E.D. Pa. May 25, 2016).

Here, Trial Counsel's failure to object to the Government's alleged vouching was not ineffective assistance because in the Court's August 18, 2014 Opinion denying Petitioner's First Motion for New Trial, it held that "the prosecutor did not vouch for witness credibility." (Doc. No. 160 at 8.) Thus, Petitioner's claim of improper vouching by the prosecution is meritless and Trial Counsel was not ineffective at trial "for failing to raise a meritless objection." Jackson, 2016 WL 3014843, at *4.

### d. Trial Counsel Did Not Admit on the Record He Was Ineffective

Finally, Petitioner contends that Trial Counsel was ineffective because he "actually admitted on the record that he had not defended [Petitioner] to [the] best of his ability and wished to remove himself from the case." (Doc. No. 224 at 8.)[30] He claims that this ineffective assistance

---

[30] This claim pertains to the November 7, 2014 hearing at which Trial Counsel, Mr. Fitzpatrick, was relieved from his representation of Petitioner. (See Doc. Nos. 178; 247 at 21:17-21.)

prejudiced the entry of his guilty pleas and his trial. (See id.) As will be discussed in detail, the record belies this claim and Trial Counsel was neither ineffective during the entry of Petitioner's guilty pleas nor at trial.

The two-prong Strickland test also "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). As noted supra, under this test, counsel is presumed to have been effective unless Petitioner establishes that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced Petitioner. See Strickland, 466 U.S. at 687. In the plea context, "the standard for deficient performance remains unchanged, . . . [whereas] the standard for prejudice 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" Weeks v. Snyder, 219 F.3d 245, 257 (quoting Hill, 474 U.S. at 59).

To demonstrate deficient performance, Petitioner must show that Trial Counsel fell short of "reasonably effective assistance" by overcoming the presumption that counsel's decisions were "sound trial strategy." Strickland, 466 U.S. at 687, 689 (citation and quotations omitted).[31] To overcome the presumption of sound trial strategy, Petitioner "must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005).

Here, Petitioner has failed to rebut the presumption of Trial Counsel's sound strategy in

---

[31] The appropriate measure of attorney performance is reasonableness under prevailing professional norms. See Strickland v. Washington, 466 U.S. 668, 688 (1984). There exists a strong presumption that counsel rendered adequate assistance to his or her client and that all significant decisions were made while exercising reasonable professional judgment. See id. at 689-90. Consequently, the Court's scrutiny of counsel's performance "must be highly deferential." Id. at 689.

representing him during the entry of his guilty pleas.[32]  Initially, Petitioner mischaracterizes the record in contending that Trial Counsel "actually admitted [at the November 7, 2014 hearing] . . . that he had not defended [Petitioner] to [the] best of his ability and wished to remove himself from the case." (Doc. No. 224 at 8.)  At the hearing, Trial Counsel represented that he had no objection to Petitioner's request for new counsel, expressing that "if the Court would allow it, . . . [he] would ask to be removed."  (Doc. No. 247 at 6:10-11; see also id. at 5:3-6.)  He made no admission, however, that "he had not defended [Petitioner] to [the] best of his ability." (Doc. No. 224 at 8.)  In contrast, Trial Counsel detailed the many ways in which he reasonably assisted Petitioner in representing him up to the point.  (See id. at 4:17-6:11.)

Moreover, Petitioner's unequivocal statements at his change of plea hearing that he was fully satisfied with Trial Counsel's representation undermine his claim that Trial Counsel was ineffective in the plea process.  "Solemn declarations in open court carry a strong presumption of verity." United States v. Brooks, 431 F. App'x 95, 98 (3d Cir. 2011) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  Accordingly, absent contrary evidence in the record, a district court may dismiss ineffective assistance claims where a § 2255 petitioner, during the plea colloquy, "unequivocally state[s] that he [or she] had a sufficient opportunity to discuss his [or her] case with counsel and was satisfied with [his or] her representation." Jackson, 2016 WL 3014843, at *3; see also United States v. Thomas, 165 F. App'x 138, 141 (3d Cir. 2006) (rejecting request to withdraw guilty plea based on alleged ineffectiveness because defendant's allegations were "undermined by his statements at his plea colloquy that he was satisfied to have his lawyer

---

[32]  As discussed supra, on the morning of trial, Petitioner pled guilty to the crimes associated with the Aya's Pizza robbery (Counts IV and V), but proceeded to trial on the remaining charges involving the Peralta and Golden Kingdom robberies (Counts I, II, III, VI, and VII).  (See Doc. Nos. 127; 152 at 23:21-28:8; 153-56.)

represent him and that he understood the Government's burden, his waiver of rights, and the charges against him.").

Here, during his plea colloquy, Petitioner stated that he thoroughly discussed pleading guilty with Trial Counsel, had enough time to discuss it with Trial Counsel, and was "fully satisfied with . . . [Trial Counsel's] representation . . . ." (Doc. No. 152 at 28:4-10.) Moreover, Petitioner confirmed on the record that he understood, inter alia, the Government's burden, his waiver of rights, the charges to which he was pleading guilty (Counts IV and V), and the mandatory minimum and statutory maximum sentences on each Count. (See id. at 24-58.)

Accordingly, Petitioner's unequivocal statements during his colloquy that he had a sufficient opportunity to discuss the entry of his guilty pleas with Trial Counsel and was "fully satisfied" with his representation vitiate his claim that Trial Counsel was ineffective in the plea process. Because the record is devoid of any evidence to the contrary, this claim will be denied.[33]

### 2. Post-Trial Counsel's Alleged Failure to Raise Claims On Direct Appeal

In Petitioner's sixth and final ineffective assistance claim, he contends that Post-Trial Counsel was deficient for failing to "properly file violations in [his] direct appeal." (Doc. No. 224 at 8.) Specifically, he argues Post-Trial Counsel failed to include in his direct appeal the following arguments that Petitioner asserts in the 2255 Motion: (1) the five prosecutorial misconduct claims

---

[33] Nor has Petitioner overcome the presumption of Trial Counsel's reasonable assistance at trial on the remaining Counts. As discussed above, almost all the ineffective assistance claims raised in the instant 2255 Motion either belie the record or are vague, conclusory allegations, which cannot sustain an ineffective assistance claim. See United States v. Schwartz, 925 F. Supp. 2d 663, 683 (E.D. Pa. 2013) (finding petitioner failed to establish counsel's deficient performance where the record contradicted the alleged deficiency); Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) ("[Defendant] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations . . . ."). Accordingly, Petitioner also has failed to present evidence to overcome the presumption of Trial Counsel's sound strategy at trial.

that were not previously litigated; and (2) the five claims under Ground 4 ("Inadmissible testimony from government witnesses Jonte King and Maleek Brown"). (See id. at 10.) The sixth claim regarding Post-Trial Counsel will be denied because the Court already has determined that these allegations lack merit and counsel cannot be ineffective for failing to raise a meritless claim.

As mentioned earlier, "counsel cannot be deemed ineffective for failing to raise a meritless claim." Werts, 228 F.3d at 203; see also Georgiou, 2018 WL 9618008, at *19 ("It was well within the range of reasonable professional assistance for Georgiou's counsel not to advance either of the present arguments that lack merit.").

Here, Post-Trial Counsel was not ineffective for failing to include the prosecutorial misconduct claims in Petitioner's direct appeal because the Court has determined that these allegations lack merit. See supra Section IV.A.3-4. Nor was Post-Trial Counsel ineffective for failing to raise in Petitioner's direct appeal the claims he advances under Ground 4 of the 2255 Motion ("Inadmissible testimony from government witnesses Jonte King and Maleek Brown") because, as will be discussed infra, these claims also lack merit. Thus, it was well within the range of reasonable professional assistance for Post-Trial Counsel not to advance any of these present arguments on direct appeal and his failure to do so does not amount to constitutionally ineffective assistance.

Thus, for all the foregoing reasons, Petitioner's ineffective assistance of counsel claims will be denied. Moreover, the "motion, files, and records, 'show conclusively that [Petitioner] is not entitled to relief'" on his claims of ineffective assistance, or on any of his claims in the 2255 Motion. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quotations omitted) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)).[34] Consequently, an evidentiary hearing

---

[34]  See also United States v. Armstrong, 799 F. App'x 116, 118-19 (3d Cir. 2020); Gov't of the

is not required.

###### D.    Ground 4: Inadmissible Testimony from Government Witnesses

In his fourth and final Ground for relief, Petitioner asserts that his sentence should be vacated on the basis of "[i]nadmissible testimony from government witnesses Jonte King and Maleek Brown." (Doc. No. 224 at 9.)  Specifically, he contends that:

1) Brown admit[ted] to lying under oath during trial[;]

2) Brown admit[ted] to testifying for deal not disclosed in plea agreement[;]

3) King's plea say's [sic] he will provide complete, truthful and accurate testimony[, yet] he only procede[d] [sic] with testimony through coaching from prosecutor[;]

4) King admit[ted] he cant [sic] recall fact's [sic] of occurrence because of him being under the influence of illegal drugs, [a]nd might have misled grand jury[; and]

5) King found lying under oath while testifying during trial.

(Id.)  These claims will be denied because they belie the record, are not supported by any evidence, or would not entitle Petitioner to relief.

The Court may summarily dismiss a § 2255 motion if: "(1) the petitioner's allegations, accepted as true, would not entitle [him] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record . . . ." McCoy, 410 F.3d at 134 (citation omitted).

Initially, Petitioner's claim that King could not testify about the events at issue without coaching from the prosecution belies the record because as discussed in Section IV.A.3, supra, the transcript of his trial testimony shows that he testified about the robberies without coaching from the prosecution.  Petitioner's arguments that King's testimony was inadmissible because he could

---

Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989);  Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010) (quoting Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008)) ("We have repeatedly emphasized that 'bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing' on a habeas petition.").

not remember the facts surrounding the robberies due to being under the influence of drugs and because he may have misled the grand jury also fail because the Federal Rules of Evidence permit a witness with personal knowledge of the events at issue to testify about such events. <u>See</u> Fed. R. Evid. 602 ("A witness may testify to a matter only if . . . the witness has personal knowledge of the matter."). Here, King had personal knowledge of the facts surrounding the Peralta and Golden Kingdom robberies that were the subject of Petitioner's trial because King admitted his involvement in both robberies. (<u>See</u> Doc. No. 154 at 150:13-16, 202:12-203:4.) Thus, King's testimony based on his personal knowledge of the robberies was admissible and Petitioner is not entitled to relief on this basis.[35]

---

[35] Moreover, under the Rules, any party may impeach the credibility of any witness with evidence suggesting that their testimony should not be believed, such as with evidence of a witness' inability to perceive events correctly due to drug use or a witness' prior inconsistent statement. <u>See</u> Fed. R. Evid. 607, 613(b). At trial, Trial Counsel impeached King's testimony on cross-examination based on his drug use at the time of the robberies and his inconsistent Grand Jury testimony as follows:

> MR. FITZPATRICK: We're talking about the Peralta Grocery Store now. . . . Do you recall testifying before the grand jury?
>
> KING: Yeah.
>
> MR. FITZPATRICK: Okay. And you were under oath to tell the truth, right?
>
> KING: Yeah.
>
> MR. FITZPATRICK: Same as you are here today, yes?
>
> KING: Right.
>
> MR. FITZPATRICK: And when you testified at the grand jury, you informed them much of the same story that you told us here today, right, that Maleek Brown went into the Peralta Grocery Store? Do you recall that?
>
> KING: Yeah.

MR. FITZPATRICK:   Okay. And do you also recall telling them that I think [Petitioner] might have went in and bought something too just to make sure that [Brown] was telling the right information?

KING:  Yeah.

MR. FITZPATRICK:  Do you recall telling them that?

KING:  Yeah.

. . .

MR. FITZPATRICK:  Have you seen the video of the Peralta . . . robbery?

KING:  Yeah.

MR. FITZPATRICK:  Okay. You would agree with me that at no point do you see [Petitioner] go into . . . Peralta . . . and buy anything, do you?

KING:  Right.

MR. FITZPATRICK:  Right. And you didn't tell us that today when you testified, correct?

KING:  Right. They didn't ask me.

MR. FITZPATRICK:  Okay.  Well, now I'm asking you.  After . . . Brown went into . . . Peralta . . ., are you testifying here today that then [Petitioner] went into . . . Peralta . . . and bought something to make sure that . . . Brown was right about how many people were in there?  Is that your testimony today?

KING:  I said I wasn't sure.  I was high.  I don't remember.

MR. FITZPATRICK:  Oh, you were high when?  Now?

KING:  No.  Back then.

MR. FITZPATRICK:  You were high when you testified before the grand jury?

KING:  When I was on the streets.

MR. FITZPATRICK:  When you were on the streets, you were high?

KING:  Yeah.

Next, the record belies Petitioner's conclusory allegations that during trial "King [was] found lying under oath" and "Brown admit[ted to] . . . lying under oath . . . ." (Doc. No. 224 at 9.) The record is devoid of any evidence or finding that King committed perjury while testifying or any admission by Brown that he was lying on the witness stand.[36]  Conversely, as discussed in Section IV.A.4, supra, the transcript of their trial testimony shows that both King and Brown indicated multiple times that they were being honest while on the witness stand, as explicitly required by their plea agreements in this case, and that they understood the significance of testifying truthfully and the consequences each would face for failing to do so.  Thus, these claims also fail.

Finally, the record also belies Petitioner's assertion that Brown "admit[ted] to testifying [in exchange] for [a] deal not disclosed in [his] plea agreement."  (Doc. No. 224 at 9.)  During the

---

. . .

MR. FITZPATRICK:  Oh, okay. Did you tell the grand jury that you were high during the robberies?

KING:  No.  They didn't ask.

. . .

MR. FITZPATRICK:  Were you high during the Peralta robbery only, or were you high during the Golden Kingdom robbery as well as the Peralta robbery?

KING: I had a habit.  I was always high.

(Doc. No. 154 at 227:1-22, 228:1-229:1, 229:23-25, 230:8-11.)

[36] At one point during Trial Counsel's cross-examination of Brown, Brown admitted to initially lying to investigators about the circumstances surrounding the Peralta robbery.  (See Doc. No. 153 at 217:9-219:13.)  Shortly thereafter, however, Brown testified that he ultimately came clean to authorities and told them the truth about what happened during the Peralta robbery. (See id. at 220:4-24.)

Government's direct examination of Brown, the prosecutor discussed Brown's plea agreement in this case as follows:

> [PROSECUTOR]:  I'm going to show you what's been marked as Government's Exhibit 20.  What is Government's Exhibit 20?
>
> BROWN:  Plea agreement.
>
> [PROSECUTOR]:  That's your plea agreement?
>
> BROWN:  Yeah.
>
> . . .
>
> [PROSECUTOR]:  Now, looking at paragraph 8A of your plea agreement on page 8, does that indicate that you are -- in addition to the conspiracy related to the Peralta Grocery Store robbery and as well as the Peralta Grocery Store robbery and the gun used in the Peralta Grocery Store robbery, that you also are going to be sentenced as to the Hobbs Act robbery of an Asian business owner's home at 2642 South Massey Road in Philadelphia?
>
> BROWN:  Yes.
>
> [PROSECUTOR]:  And is that information that you voluntarily gave to the government?
>
> BROWN:  Yes.
>
> [PROSECUTOR]:  And as far as any other crimes that you've committed, have there been any promises that you're not going to be prosecuted for those crimes?
>
> BROWN:  No.
>
> [PROSECUTOR]:  Who is the only person who can decide your sentence in this case?
>
> BROWN:  The judge.
>
> [PROSECUTOR]:  So at this point, have there been any promises made to you about whether or not you are going to receive a reduced sentence?
>
> BROWN:  No.

(Doc. No. 153 at 189:1-6, 189:22-190:20.)  Accordingly, while Petitioner does not cite to any

portion of his trial transcript or any other evidence to show that Brown had an undisclosed agreement with the Government, the transcript of Brown's testimony contradicts Petitioner's allegation that he testified against him in exchange for an undisclosed deal.

For these reasons, Petitioner's claims regarding the trial testimony of King and Brown will be denied.

## V. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. No. 224) will be denied. The Court will not hold an evidentiary hearing. A certificate of appealability will not be issued.[37]

An appropriate order follows.

---

[37] A federal district court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a court denies a habeas petition without reaching the underlying constitutional claims, the petitioner must demonstrate that reasonable jurists would find it debatable (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural rule. Id. If the district court properly invokes a plain procedural bar to dispose of a case, "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id. Here, there is no debatable constitutional claim. Based on the reasons set forth supra, the Court is convinced that reasonable jurists would agree with the conclusions made here. Consequently, Petitioner has failed to make a reasonable showing of the denial of a constitutional right, and the Court will not issue a certificate of appealability.